## Williams v. Smith

*L. E. Enterline*, for plaintiff.
*Kilker & Kilker*, for defendant.

CURRAN, J., December 18, 1939.—Judgment was entered by confession to no. 65, May term, 1939, against defendant, Ida Smith. The judgment was entered by virtue of a written power of attorney executed by defendants, Ida Smith and Anthony Smith, which was incorporated in a bond, the relevant portion of which is as follows:

"And further we do by these presents empower Frank J. Laubenstein, or any other attorney of any court of record in the State of Pennsylvania, or elsewhere, to appear for us therein, and confess judgment against us for the said penal sum, with costs of suit and release of all errors, and we do hereby waive the right of inquisition on real estate and all laws exempting real or personal property, from levy and sale on execution.

Anthony Smith<br>Ida Smith

Sealed and delivered
in the presence of us:
    Frank J. Laubenstein"

A suggestion of the death of Anthony Smith was placed upon the record and judgment entered against Ida Smith. Subsequent to the entry of judgment, motion was filed by defendant, Ida Smith, to strike off the judgment entered against her, basing her right to the relief prayed for upon the fact that the warrant of attorney upon which the

judgment was entered was a joint obligation, and that the judgment was entered against Ida Smith alone.

At the argument, in support of her contention defendant relies upon various decisions of other jurisdictions. An examination of these authorities indicates that the basis of their decision rests upon the English case of Gee v. Lane, 15 East 592, 104 Eng. Rep. 967. In that case, the opinion written by Ellenborough, C. J., indicated that an authority to enter judgment "against us" did not warrant judgment against one alone. It would appear, however, that the case of Gee v. Lane was not followed by the Pennsylvania courts.

In the case of Croasdell v. Tallant, 83 Pa. 193, the instrument upon which the judgment was there entered recited:

" 'Six months after date, for value received we, or either of us, promise to pay to Miss Jane Tallant or order, eight hundred and thirty two dollars . . . money borrowed. . . . And we empower any attorney, . . . to appear for us and confess judgment against us for the above sum . . .' ."

The note was signed by three makers. After the death of one of the three makers of the note, judgment was entered against the two survivors. The matter was before the court on a rule to show cause why the judgment should not be stricken off for the reason that the power to confess judgment was a joint power, and after the death of Gray did not authorize the entry for confessing judgment against the survivors. In the opinion of the court we find the following (p. 195):

"The warrant of attorney in this case was treated as joint by the plaintiff, and judgment entered against the two survivors. The obligation, however, was joint and several, and the warrant of attorney a part of it and a mere continuation of the instrument before the signatures. It would scarcely be a departure from its true intent to construe the warrant to be several as well as joint.

But treating it as joint, as the plaintiff did, we are not disposed to follow the English case of Gee *v.* Lane, 15 East 592. . . . Looking then to the wide departure of our law from the English rules affecting judgments, and also to the fact that the prothonotaries may, under the Act of 1806, enter judgment on a bond and warrant of attorney, and without the intervention of an attorney and confession of judgment, we must treat this case as one to be governed by the intent of the warrant, rather than by English decisions."

Again, in the case of Woodward v. Carson, 208 Pa. 144, a note containing a warrant of attorney to confess judgment was executed by a father and his son. The language of the note there recited:

"Ten days after date we promise to pay Byron Woodward his executors, administrators, or assigns, the sum of Six hundred & ten dollars—without defalcation for value received. And we do hereby confess judgment unto the said Byron Woodward for the said sum; and we do hereby authorize any prothonotary, clerk or attorney of any court of competent jurisdiction to enter up this judgment against us, and in favor of the said obligee, etc."

Subsequent to the death of the father, judgment was entered against the son. In the opinion written by Thompson, J., appears the following (p. 145) :

"In the present case the note was made by the appellant and his father, and at the time of the entry of the judgment the father was dead, but notwithstanding his death the appellee had full warrant for entering his judgment".

While it would seem that the question has never been clearly ruled upon by the appellate courts in Pennsylvania, the quotations from the above opinion would indicate: First, that the case of Gee v. Lane, supra, has not been followed by the courts of Pennsylvania; and second, that where, as in the present case, the authority to enter judgment was executed by joint obligors, judgment may

be entered against the survivor after the death of one of them.

And now, to wit, December 18, 1939, the motion to strike off the judgment is overruled.